In re the MARRIAGE OF Joanne SMITH
and James Wilson Smith.

Upon the Petition of Joanne SMITH,
Appellee, and concerning James
Wilson SMITH, Appellant.

No. 61284.

Supreme Court of Iowa.

Aug. 30, 1978.

Hyland, Laden & Pearson, Des Moines, for appellant.

Nolden I. Gentry, Jr., and Thomas J. Levis, Des Moines, for appellee.

R. Earl Barrett, Des Moines, for child.

UHLENHOPP, Justice.

This appeal in a dissolution proceeding involves the propriety of placing custody of a child with a relative rather than with one or the other parent. The parties and the relative do not raise issues as to personal jurisdiction of the relative or as to willingness of the relative to accept custody.

James Wilson Smith, the husband in the case, was previously married and divorced. By that marriage he had several children from whom he is completely estranged. Joanne Smith, the wife, had two common-law marriages before she married Smith. By the prior marriages she had several children, all of whom have been in trouble of one kind or another. Thus one was in the penitentiary, another was in the boys' training school, and a third was involved with drugs.

James and Joanne have a daughter, Jamie Lea Smith, now six years old. Their marriage disintegrated and they obtained a dissolution. Neither of them could properly provide for Jamie, and so the dissolution court placed the child with Joanne's brother. The brother was unable to care for the child, and in further proceedings on September 21, 1976, the court placed the child temporarily with James' brother and his wife, Mr. and Mrs. Charles Smith. The child has progressed well in that home, remains there to this time, and is available for visitation by James and Joanne. On September 26, 1977, on James' application, the court held a further hearing to determine permanent custody and granted custody to Charles Smith, with the right of the parents to visit Jamie and the responsibility on the parents' part to contribute $25 per week to her support. James appealed, asking that we give him custody. Joanne did not cross appeal.

■ Our polestar of course is Jamie's best interests. *Painter v. Bannister*, 258 Iowa 1390, 140 N.W.2d 152, cert. den. 385 U.S. 949, 87 S.Ct. 317, 17 L.Ed.2d 227. A presumption exists that the child's own parents will most likely fulfill those interests. Code 1977, § 633.559; *Matter of Guardianship of Sams*, 256 N.W.2d 570 (Iowa). The general principles in divorce cases specifically are stated in 24 American Jurisprudence 2d Divorce § 789 at 896–897:

The divorce courts have the power to award custody of a minor child to a stranger to the action, such as a grandmother or an aunt. If both parents are unfit, or if the only parent who contests the issue with a stranger is unfit, custody is properly awarded to a stranger to the action for divorce. It has been recognized moreover, that even though a parent is fit to have custody, he may be denied custody if this is clearly inimical to the best interests of the child.

Of course, though, where a parent is a proper person to have custody and can provide a reasonably good home, and the child's best interests will be promoted by giving custody to the parent, custody will not be awarded to a stranger to the action. It is presumed to be for the best interests of the child that it live with its natural parent, unless it is shown that the parent is unfit or has abandoned the child. Moreover, where, in a proceeding for custody, one establishes that he is a parent, a prima facie case for custody is made out in his favor, and the burden is then upon the third person to show that the parent is unfit or has forfeited his right to have custody.

And in 27B C.J.S. Divorce § 308c at 443–446:

> Unless required by statute, the court is not bound to award the custody to one of the parents, but it may award custody to a third person, when conditions are shown to be such that to continue the custody of the child with the parents, or either of them, would be contrary to the permanent well-being of the child. Accordingly, in a proper case, custody may be awarded to a school, or organization, or to grandparents of the child.
>
> In the absence of evidence to the contrary, the law presumes that the child's welfare will best be served by committing it to the custody of one or the other of its parents, although circumstances and evidence may overcome the presumption. The parents' right by nature and by law, to the custody of children, should never be denied, except for the most cogent reasons, and unless it is clearly shown

that both the parents are unqualified. Accordingly, a parent who is not shown to be unfit ordinarily is entitled to custody as against a grandparent; and the right of grandparents to custody of a child under a divorce decree is no different from that of any third person or stranger to the marriage. A statute empowering the court to determine which of the parties shall be awarded custody has been held to prohibit an award of custody to any one other than a parent, but a similar statute has been construed as not prohibiting this when the welfare of the child demands it.

While these principles have been applied in numerous divorce cases across the country, this court has not often had occasion to speak to them in divorce (dissolution) litigation. Two of this court's relevant decisions are *Oliver v. Oliver*, 216 Iowa 57, 59, 248 N.W. 233, 235, and *Jensen v. Jensen*, 237 Iowa 1323, 25 N.W.2d 316. In *Oliver* the trial court granted custody of children to the paternal grandmother with whom the children had spent considerable time. The mother of the children appealed. This court did not set out the evidence at length but stated:

> The order will not seriously disrupt the manner of living of the children, and reserves to appellant adequate association with her children. We are satisfied that the order made by the trial court in respect to the custody of the children was for the best interests of the children, under the circumstances then surrounding them.

In *Jensen* this court refused to modify a divorce decree awarding custody to a maternal grandmother with whom the child had been living satisfactorily since the original decree.

We approve the general principle quoted from the encyclopedias that in original dissolution proceedings—which we consider this proceeding to be although, unfortunately, it comes a considerable time after the original decree—the dissolution court should ordinarily award custody to a parent

 

and a strong case to the contrary must appear before the court should do otherwise. Our examination of the record persuades us that this case is a strong one to the contrary.

No question can exist as to Joanne's incapacity to care for Jamie adequately. Joanne is unstable, sometimes hysterical, and persists in threatening to commit suicide. Indeed, she caused such an uproar at the latest district court hearing that she had to be excused from the courtroom before the proceeding could progress. This woman obviously needs help and her plight naturally arouses sympathy. But our quest is for a custodian for Jamie among the "available alternatives." *In re Marriage of Winter*, 223 N.W.2d 165, 167 (Iowa). Placing Jamie with Joanne is out of the question. The most Joanne should have is visitation, which the trial court allowed.

The answer is less clear as to James but it is clear enough to require that Jamie be left where she is, to further her best interests. We need not recite the evidence except to say that a number of items in the transcript indicate that James should not have custody. Looking at the problem from Jamie's standpoint, we believe the most James too should have is visitation, as the trial court authorized. Aside from the specific items of evidence we cannot overlook Jamie's having lived satisfactorily for a considerable period with the Charles Smiths. Jamie has set down roots there, and we are loath to disrupt that relationship. Furthermore, granting custody of Jamie to James would render visitation of Jamie by Joanne very difficult, as the James-Joanne relationship is explosive. In addition, James works away from home daily until about 6:00 p. m., and he also desires one or two evenings out each week for recreation. Thus with custody in James, the Charles Smiths would still have Jamie five days and perhaps one or two evenings per week, while James would have her seven nights, two days, and five or six evenings. The child will have a calmer life where she is, with less confusion for her as to where "home" is.

Upon consideration of the evidence in light of the applicable principles of law, we arrive at the conclusion that the trial court wisely left Jamie in the custody of Charles Smith. We view this as a permanent placement, with future changes, if any, by modification only, under § 598.21 of the Code.

Appellant's motion to strike brief, submitted with the appeal, is sustained.

AFFIRMED.

All Justices concur except McGIVERIN, J., who takes no part.