In re the MARRIAGE OF Lori Lynn SNYDER and Ricky Lee Snyder.

Upon the Petition of Lori Lynn SNYDER, Appellee,

v.

And Concerning Ricky Lee SNYDER, Appellant.

No. 62233.

Supreme Court of Iowa.

March 21, 1979.

David P. McManus of Olinger, Sosalla & McManus, Cedar Rapids, for appellant.

Mark H. Rettig of Hines, Pence, Day & Powers, Cedar Rapids, for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McCORMICK and ALLBEE, JJ.

McCORMICK, Justice.

We are asked by the child's father to reverse a trial court order denying modification of a dissolution decree which awarded custody of six-year-old Angela Lyn Snyder to her mother, petitioner Lori Lynn Snyder (now Lori Lynn Aarkus). Although the court refused to change custody, its order placed Angela under protective supervision of the department of social services. Respondent Ricky Lee Snyder contends the trial court erred in refusing to shift custody to him and in ordering protective supervision. We affirm in part, modify in part, and remand.

■ I. *The custody decision.* Principles which govern changes of custody are premised on the concept that once custody is fixed it should be disturbed only for the most cogent reasons. As a result, a noncustodial parent seeking custody must establish by a preponderance of evidence that conditions since the court decree have so materially and substantially changed that the child's best interests make the change expedient. The change in circumstances must meet the criteria delineated in *Hobson v. Hobson,* 248 N.W.2d 137, 139–140 (Iowa 1976). In addition, the noncustodial parent must prove an ability to minister more effectively to the child's well being. *In re Marriage of Melton,* 256 N.W.2d 200, 205 (Iowa 1977).

In the present case neither parent has a very good record of concern for Angela. They were married in the summer of 1971. Angela was born in March 1972, and the marriage was dissolved in December 1972.

Ricky left for California before the decree was entered. He was ordered to pay $25 per week alimony and $40 per week toward Angela's support. However, despite the fact he was gainfully employed most of the time, he paid nothing toward these obligations until forced to commence paying child support in August 1977 through action of the Friend of the Court office. He saw Angela only three times after the decree was entered, ignored her on her birthdays and at Christmas, and made no effort to communicate with her.

Instead, he pursued his occupation as a sheet metal worker, lived with a young woman, fathered a child born to her in 1975, married her in 1977, and used and sold marijuana.

In the meantime, Lori supported herself and Angela with Aid to Dependent Children benefits. She regularly used marijuana, sold it on at least one occasion and at the time of trial was charged with manufacturing hashish. Her current husband had pled guilty to the same charge. Lori lived at least seven or eight different places during this period, on four occasions with men. She was briefly married to one of them. Another of the men was her present husband whom she married after they had resided together for some time.

Much of Angela's care was provided by her grandparents and other relatives on both sides. Fortunately they took good care of her. It also appears that despite Lori's instability Angela is deeply attached to her. The relationship between them is one of love and affection.

At approximately the time the present modification action was filed, Lori discovered she was pregnant. In the subsequent several months she modified her lifestyle and Angela's situation improved. Whereas Angela previously missed school frequently and was sent to school tired because of insufficient rest, she became regular in attendance and achieved normally.

■ After reviewing the evidence, the trial court reached the following material conclusions:

The court is gravely concerned about the conditions under which this child is presently living, but finds from the evidence presented that the respondent has very little to offer in substitution therefor. The Courts have many times stated that the parent seeking to take custody away from the other parent has the burden of showing some superior claim and

an ability to minister, not equally, but more effectively to the child's well-being. The respondent does not know his daughter, nor does she know him, and it would be extremely traumatic to uproot this six-year old child and send her off to California to live with people she doesn't know, even if that were made necessary by some disaster which occasionally occurs, but to do it by Court order because her mother has elected to adopt a lifestyle that is basically undesirable, without giving her an opportunity to change it, is a drastic procedure that must be warranted by the overall view of the situation.

The Court is not required to, nor should it remove this child from the home of her mother unless the conditions are so deplorable that there is no other recourse. The Court finds that it is not without recourse in this case. The Court will not modify a decree of dissolution to change the custody of a child, either as a reward to one parent or as punishment to another. This child should not be disturbed or her life disrupted unless it is clearly mandated by the circumstances.

The Court finds that this child, who is only six years of age, in spite of the surroundings under which she has lived for the past several years and in spite of the conflict which has up until a few months ago surged about her, is in good health, reasonably well fed and cared for and has adequate clothing. In the apartment where petitioner now lives, Angela has a room of her own and she obviously loves her mother and is loved by her.

The Court does find, however, that the lifestyle of the petitioner and the conditions under which this child has been living if continued or repeated could be hazardous to the long-range best interests of the child, and this situation warrants the attention of the Department of Social Welfare so that counseling can be provided and supervision given to protect the best interests of said child, and to that end the Court finds that this child Angela Lyn Snyder, age six, is in need of assistance. The Court is not going to modify the Decree so as to change custody and she is going to remain in the custody of her mother; however, the Court hereby orders that said child be placed under the protective supervision of the Linn County Department of Social Welfare and directs that said Department of Social Welfare shall, at least during the next year, specifically assign this case to a case worker who shall, as a part of her supervision, visit in the home of the petitioner and said child regularly, and in her supervision require that the child gets sufficient sleep and rest, that she not be exposed to gatherings of persons where drugs or marijuana are used or where there is any excessive use of liquor, and to make sure that the child is permitted to visit regularly with the paternal grandparents and members of her father's family, as well as the maternal grandparents and members of her mother's family. The Department of Social Welfare shall report to the Court with respect to such supervision every six months until further orders.

We agree with the trial court that Ricky did not meet his burden to show custody of Angela should be transferred to him. The court was right in denying his application to modify the decree.

II. *The order for protective supervision.* We must also respond to Ricky's contention that the court had no jurisdiction to put Angela under protective supervision of the department of social services. He argues that the issue of need for protective supervision could not be litigated in the dissolution case because the juvenile court had exclusive jurisdiction to determine that issue. *See* § 232.63, The Code 1977 ("The juvenile court shall have exclusive original jurisdiction, only, in proceedings concerning any child alleged to be . . . in need of assistance . . .."); *In re Warren,* 178 N.W.2d 293, 297 (Iowa 1970). The same jurisdictional separation exists under the new juvenile justice law. *See* § 232.61(1), The Code 1979 ("The juvenile court shall have exclusive jurisdiction over proceedings under this Act alleging that a child is in need of assistance."). All subsequent statutory references herein are to the 1979 Code.

We agree that the trial court lacked jurisdiction to adjudicate whether Angela was a "child in need of assistance" as the term is defined in section 232.2(5). The juvenile court is the exclusive forum for proceedings leading to an adjudication of such status. § 232.61(1). These proceedings have far-reaching effects on the rights of children and parents. *See* §§ 232.100–232.102. They may even serve as a prelude to termination of the parent-child relationship. *See* § 232.114. A child can be adjudicated a "child in need of assistance" only in a juvenile court action conforming with notice and hearing requirements specified in the juvenile law. *See* §§ 232.87–.103; *In re Hewitt*, 272 N.W.2d 852 (Iowa 1978).

When a basis appears for believing judicial proceedings should be initiated to determine whether a child is in need of assistance, it is appropriate for the court to refer the matter to an agency or person with authority to initiate those proceedings. *See* § 232.87.

However, a trial court in a dissolution case custody dispute is not powerless to impose reasonable conditions upon an award of custody. Under Code section 598.-21 the court has power to enter such a custody order "as shall be justified" and to make changes "when circumstances render them expedient." This includes the right of the court in appropriate cases to provide for supervision of custody.

In situations analogous to the present case we have directed modification of custody decrees to include a provision for supervision of custody by the court on such terms and for such period as to the trial court in its discretion appear reasonable. *See Roff v. Roff*, 228 N.W.2d 98, 100 (Iowa 1975); *In re Marriage of Bowen*, 219 N.W.2d 683, 689 (Iowa 1974). Such provision however is not based on an adjudication that a child is in need of assistance within the meaning of the juvenile law, and it does not have the effect of such an adjudication. Instead it merely enables the court to monitor custody in an effort to assure that the child receives proper care. Whether the assistance of the department of social services is available to the court when a chapter 232 proceeding is not involved is not an issue in this case. The department was not a party to the present proceeding, and we have no occasion to determine whether it has either authority or responsibility to help the court supervise custody.

We modify the trial court's decree to delete the finding that Angela is a child in need of assistance and the provision for protective supervision by the department of social services. Upon remand the trial court is authorized to include in the decree a provision for supervision of Angela's custody in conformance with this opinion. In implementing this provision the court may use the resources which are available to it. In addition, or in the alternative, the court may refer the problem to juvenile authorities.

Except as modified the trial court's decree is affirmed.

AFFIRMED IN PART, MODIFIED IN PART, AND REMANDED.