In re the MARRIAGE OF Karen R.
CORBIN and Junior L. Corbin.

Upon the Petition of Karen R.
Corbin, Appellee,

And Concerning Junior L. Corbin,
Appellant.

No. 66301.

Supreme Court of Iowa.

June 16, 1982.

Rehearing Denied July 15, 1982.

Steven E. Ort, Keokuk, for appellant.

Vivian P. Meyer, Keokuk, for intervenors-appellees James and Melody Kisor.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, McGIVERIN and LARSON, JJ.

McGIVERIN, Justice.

This appeal, arising from a dissolution of marriage decree, involves the custody of the three minor children of petitioner Karen R. Corbin and respondent Junior L. Corbin. Respondent appeals the award of custody to intervenors-appellees, James and Melody Kisor. Petitioner withdrew her claim for custody during the trial proceedings, recommended placement with intervenors, and does not appeal. We must consider three issues: 1) whether trial court had subject matter jurisdiction to award Kisors permanent custody of the children; 2) whether trial court erred in allowing Kisors to intervene in the dissolution action; and 3) whether trial court erred in placing custody of the children with Kisors. We find the court had subject matter jurisdiction, made no reversible errors and therefore affirm.

Petitioner and respondent were married on May 17, 1966. During the marriage Karen gave birth to the three minor children at issue in this appeal. They are a boy, born February 6, 1969; a girl, born October 7, 1970; and another girl, born December 11, 1971. Petitioner entered the marriage with three children of her own, who lived with the couple for the duration of the marriage, and whose custody is not at issue here.

Karen petitioned for a dissolution of her marriage to Junior in 1977. After trial, on July 20, 1978, Judge Tucker filed findings, conclusions and an order. The order dissolved the marriage and made various awards. As to the issue of child custody, the court found that it would be potentially injurious to place the children in the home of either natural parent. The court determined it was not in a "position to make a final decision which will be in the best interests of the children as to custody." Instead, the court: 1) appointed attorney John E. Kultala to represent the minor children, investigate the facts surrounding child custody, support and visitation, and report the results to the court; 2) placed the children in the temporary custody of the Department of Social Services (DSS) for placement in a suitable foster home until a final order would be entered; 3) ordered the DSS to establish and supervise visitation by the natural parents; and 4) ordered petitioner to pay $15 per week and respondent $75 per week in temporary child support.

Pursuant to the court's order the DSS placed the minor children in the foster care of intervenors. The children remain in the Kisor's custody at the present time. On July 23, 1979, after extensive examination of the children and their parents, attorney Kultala filed his report. In it he recommended that the "children remain under the care, custody and control of the foster parents, Mr. and Mrs. James Kisor, on a long-term basis."

On August 4, 1980, respondent filed a petition for writ of habeas corpus to recover custody of the children from the DSS. Judge Cahill denied the petition.

On August 19, 1980, in the dissolution case, the intervenors filed an "Application for Temporary and Permanent Custody of Children of the Parties." Trial court or-

dered a hearing on the matter of permanent custody of the children. After a three day hearing, Judge Cahill entered findings, conclusions and directions as to decree on December 22, 1980. The ruling placed permanent custody of the children with intervenors. It also provided, *inter alia*, for continued payment of child support by petitioner and respondent and for reasonable visitation. A final decree of dissolution, filed on January 23, 1981, incorporated the child custody and other provisions of the December 22 ruling. Respondent appealed.

I. *Subject matter jurisdiction.* Respondent contends trial court lacked subject matter jurisdiction to enter either the July 20, 1978, order or January 23, 1981, decree with regard to child custody. We do not agree.

■ Subject matter jurisdiction is an issue that can be raised at any time and which we decide anew. *St. Clair v. Faulkner*, 305 N.W.2d 441, 445 (Iowa 1981). As a starting point, we believe trial court had subject matter jurisdiction to enable it to enter the July 20, 1978, order by virtue of sections 598.11 and .21, The Code 1977. Section 598.11 provided: "The court may on its own motion and shall upon application of either party or an attorney appointed under section 598.12 determine the temporary custody of any minor child whose welfare may be affected by the filing of a petition for dissolution." Section 598.21 provided: "When a dissolution of marriage is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be justified." Thus, whether the July 20, 1978, order is seen as a final decree of dissolution or as a temporary order, the placement of custody in the DSS or foster care seems to be within trial court's subject matter jurisdiction.

A more definitive resolution of this issue, however, and one that covers both the July 20 and January 23 rulings, necessitates reference to three recent decisions of this court. *In re Marriage of Snyder*, 276

N.W.2d 402 (Iowa 1979), involved an action to modify the child custody provisions of a dissolution decree. In *Snyder*, trial court refused to change custody of a minor child from the mother to the father, but did place the child under protective supervision of the DSS because "Angela . . . is in need of assistance." *Id.* at 404–05. We found that the trial court did not have jurisdiction to adjudicate whether the minor child was a child in need of assistance pursuant to section 232.2(5), The Code. *Id.* at 406. We continued:

However, a trial court in a dissolution case custody dispute is not powerless to impose reasonable conditions upon an award of custody. Under Code section 598.21 the court has power to enter such a custody order "as shall be justified" and to make changes "when circumstances render them expedient." This includes the right of the court in appropriate cases to provide for supervision of custody.

*Id.* Contrary to respondent's contention on appeal, we do not find that *Snyder* prohibits either the July 20 or the January 23 orders. Rather, *Snyder* allows trial court to exercise its section 598.21 jurisdiction "to assure that the child receives proper care." *Id.* Trial court did so in the present case by placing temporary custody with the DSS and final custody with the Kisors.

*In re Marriage of Carrico*, 284 N.W.2d 251 (Iowa 1979), involved the appeal of the child custody provision of a dissolution decree. After the petition for dissolution was filed, trial court conducted a hearing on the temporary custody of the minor child of the natural parents. *Id.* at 253. Temporary custody was given to the DSS pursuant to stipulation.[1] *Id.* The DSS placed the child in the home of the father's parents for several months and then allowed the child to live with the mother. The court subsequently ordered that the child be placed in a foster home. *Id.* By the time of the final dissolution decree neither parent sought permanent custody of the child. Instead, the paternal and maternal grandparents

---

1. The fact that custody was pursuant to stipulation of the parties does not distinguish *Carri-* *co* from the present case on the issue of subject matter jurisdiction.

contested for custody of the child. Trial court found neither parent fit for custody and that neither set of grandparents could endure the rigors of raising another child. *Id.* Trial court ordered that custody be retained by the DSS and

> that they, in their discretion and at an appropriate time, institute termination proceedings in accordance with the provisions of chapter 600A of the Code of Iowa, as amended, with a view to ultimate adoption of the child, Joey, by someone other than the parties to this action. Such department is also given the discretion to maintain Joey in such foster home as it deems suitable . . . .

*Id.* at 254. On appeal we affirmed the placement of custody with the DSS but reversed, on subject matter jurisdiction grounds, the direction for the DSS to bring termination proceedings. *Id.* at 255.

■ *Carrico* allowed temporary placement of custody with the DSS. *Id.* It clearly authorizes the July 20, 1978, order placing temporary custody of the minor children with the DSS. *Carrico* also allowed placement of permanent custody with the DSS. *Id.* We find that trial court in the present case was authorized, under *Carrico*, to order permanent custody with a prior foster parent instead of the DSS. Thus, the January 23, 1981, decree was also within the subject matter jurisdiction of trial court.

Respondent contends *Iowa Department of Social Services v. Blair*, 294 N.W.2d 567 (Iowa 1980), deprives trial court of subject matter jurisdiction for either order. In *Blair*, the DSS challenged, on lack of subject matter jurisdiction grounds, trial court's order in a dissolution case that the department maintain protective supervision over the four minor children of the parties. *Id.* at 568. "No prior notice had been served on the Department and the order was not entered with the consent of the Department." *Id.* at 569. In other words, in *Blair* the DSS did not want to be involuntarily involved in protective supervision of those minor children.

We found that the trial court lacked subject matter jurisdiction under chapter 598 to order DSS to involuntarily afford protective supervision of the minor children: "Protective supervision is allowed only after a dispositional hearing before the juvenile court." *Id.* at 570. "In so holding, we do not mean to preclude departmental involvement if approached through the appropriate channels." *Id.* We believe that DSS involvement has been approached through appropriate channels in the present case. Unlike *Blair*, the DSS here has consented to its custody and supervision role in this case. We find the July 20, 1978, placement of temporary custody with the DSS was therefore justified and within the subject matter jurisdiction of the court.

In summary, we find trial court possessed subject matter jurisdiction for the July 20, 1978, and January 23, 1981, custody orders.

■ II. *Intervention of foster parents.* Respondent contends trial court erred by entertaining Kisor's "Application for Temporary and Permanent Custody of the Children of the Parties" on August 19, 1980. We find no error.

Section 598.21, The Code 1979, provided: "Orders relating to custody of children shall be subject to the provisions of chapter 598A."[2] Section 598A.10, The Code, provides in part:

> If the court learns . . . that a person not a party to the custody proceeding has *physical custody* of the child or claims to have custody or visitation rights with respect to the child, it shall order that person to be joined as a party and to be duly notified of the pendency of the proceeding and of that person's joinder as a party.[3] (Emphasis supplied).

Since trial court was under an obligation to join the Kisors, as *physical custodians* of the children, as parties to the proceeding, it was not error to entertain their August 19,

---

2. Section 598.21(6), The Code 1981, retains this provision.

3. The present action is a "custody proceeding." §§ 598A.2(2) and (3).

1980, application for custody in the dissolution case.[4]

III. *Merits of the custody award.* Respondent contends trial court erred by awarding permanent custody of the minor children to Kisors. We do not agree.

■ Our review of the custody decision is de novo. *In re Marriage of Carrico*, 284 N.W.2d 251, 254 (Iowa 1979). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but we are not bound by those findings. Iowa R.App.P. 14(f)(7). Our first and governing consideration in a child custody matter is the best interests of the children. *Carrico*, 284 N.W.2d at 254; Iowa R.App.P. 14(f)(15).

■ Our de novo review of the record convinces us that it is in best interest of the three minor children that they not be placed in the custody of their father, Junior L. Corbin. In its December 22, 1980, findings and conclusions, trial court made this statement about respondent, "while the respondent was living with the petitioner and the children, his treatment of the children was such that it might be characterized as cruel and sadistic." The remark is well supported by the record. Respondent's attempts to discipline both his children and stepchildren are marked by an admixture of uncontrolled anger and cold-blooded calculation of methods to inflict maximum pain and humiliation. Recital of several incidents of disciplinary abuse will suffice to support the conclusion that respondent is unfit to be custodian of his children. Respondent disciplined his stepson by a combination of whipping with a strap and pouring ground pepper into his mouth and throat. By his own admission, respondent "strapped" another stepson with a razor strap from the buttocks to his shoulders until the child fell to the floor in agony only to be kicked repeatedly in the legs and abdomen by respondent. The other children were also subject to repetitive and severe strappings, facial slappings, and occasional kickings. On at least one occasion, respondent struck his son on the side of the head with such force that the child's eardrum ruptured.

These frightening episodes of brutality are exceeded in depravity only by respondent's attempts to be creative in his terrorism and violence against the children in his custody. He constructed a pillory or stocks into which the three boys, his son and two stepsons, would be padlocked for up to two hours. If they cried or complained, respondent would beat them with the razor strap.

There were several other instances of sadistic and extreme punishment and abuse to the children living with him.

Respondent also turned his physical violence upon the petitioner. He slapped and punched her in the face and body on the three different occasions including a particularly animalistic assault where he ripped hair from her scalp and struck her in the face five or six times. Respondent is possessed of a violent temper and is, by all accounts, unable to control both his seething well of anger and other emotions.

Although no other discussion is necessary to conclude respondent is unfit to have custody, there are other factors which militate strongly against his custody. He has shown a total lack of interest in seeking counseling or guidance to help improve his behavior or gain parenting skills. The only inquiry he made in this regard was a single question about the availability of homemaker services through the DSS. Respondent has displayed a lack of motivation to change his ugly behavioral patterns.

He also has shown a lack of concern for the best interests of his children. Less than one-third of his child support obligation required by the July 20, 1978, order has been paid. The record indicates that such failure was not due to a lack of funds. Respondent spirited the children out of the petitioner's custody for three days without letting Karen know of their location. He has not made

---

4. It appears that the DSS, as legal custodians, also should have been joined as a party under § 598A.10.

inquiries as to the children's academic and behavioral progress while they have been in foster care. Finally, he has encouraged discontent in the children by continually informing them that they will be returned to him in a short period of time. This has caused the minor children, his son in particular, to suffer momentary digressions in behavioral and academic progress.

There is a factor that might favor respondent's custody if he were not otherwise an unfit parent. He has regularly attended scheduled visits with the children. However, he has also appeared for an excessive number of unauthorized visits. We cannot approve his interference with DSS visitation planning.

The Kisors, on the other hand, appear to be nearly ideal custodians. We agree with the trial court that it is in the best interest of the children that they be placed in the permanent custody of the Kisors. This conclusion is also supported by recommendations to that effect from several professionals intimately involved and familiar with the facts of this case: Gerald Solomons, M.D., Professor of Pediatrics and Director of the Child Development Clinic at the University of Iowa College of Medicine; John E. Kultala, attorney for the minor children; Meg Oliver Mills, school social worker for Area Education Agency 16; and Valerie Wheeler, teacher of children with emotional disabilities employed by the Keokuk school district. No independent person recommended that respondent receive custody.

The Corbin children arrived at the Kisor residence shortly after the July 20, 1978, order. They were dirty and their hair was oily and unkempt. They brought very little clothing with them. Their eating habits were poor and their speech was punctuated with profanities. The boy had difficulty speaking in an understandable manner. He had an expressive language problem and functioned at the level of six and one-half years of age, although he was nine and one-half years old. He was diagnosed as having unsocialized-aggressive behavior.

The prognosis for any substantial behavioral progress was guarded.

One girl had a minor emotional problem. The other girl did not have any significant psychological problems, but was diagnosed as basically insecure with tendencies towards acting out. In 1978, the three children were of average intelligence although their language arts skills were considerably below age level, in the boy's case due to emotional disabilities and in the girls' due to learning disabilities.

Since the children have been in Kisor's custody, they have made substantial behavioral and academic progress. Meg Oliver Mills, a school social worker, testified that because a "very consistent home environment . . . one which is very structured, and one which is nurturing" has led to improvement in the boy's behavior, he is no longer considered an unsocialized-aggressive child. For example, when the boy arrived at the Kisor's, he almost immediately engaged in fistfights with and alienated most of the children of his age in the neighborhood. Since then Kisors have corrected his aggressive behavior and he now has several close friends in the neighborhood.

With Kisors' emotional support and medical attention, the girls have overcome emotional problems they had when they arrived in 1978. The children have closed the gap on their peers in terms of academic performance and reversed the downward academic slide in which they were locked. Kisors have been involved and cooperative with school officials in the process.

In essence, the children have had a stable, caring environment in which to progress under the Kisors' custody. And most importantly, they have flourished in that environment. There is a loving, cooperative relationship between Kisors and the children. Kisors' discipline is done in love, not in anger, and has been constructive. The children have made personal and academic progress in their care and custody. The children are happy. Kisors are financially able to provide for the children and their house is an adequate accommodation.

Although the son professes to want to live with his father, we agree with trial court that the statement is a manifestation of the "battered child syndrome" (abused child feeling responsible for his beatings desires to return to parent to show parent he is no longer bad or deserving of beatings). One girl expressed a desire to remain with Kisors.

■ Ordinarily a dissolution court should award custody to a natural parent of the children at issue. *In re Marriage of Smith*, 269 N.W.2d 406, 408 (Iowa 1978). However, when there is a strong case to the contrary, the court may make an award to another person including a stranger to the marriage. *In re Mann*, 293 N.W.2d 185, 186–87 (Iowa 1980); *Smith*, 269 N.W.2d at 409. We have been presented with the strongest possible case here.

Kisors have carried their burden to prove the unsuitability of the parents of the minor children to have custody. *Mann*, 293 N.W.2d at 187. Respondent has been and would be a poor custodian of the minor children. Kisors have been and we hope will continue to be excellent custodians of the children. The children have done well in their care. We find it in the best interest of the children to remain in the permanent care and custody of the Kisors.

We have considered all of the contentions raised by respondent and find them without merit. Therefore, the January 23, 1981, decree fixing custody in Kisors is affirmed in all particulars.

AFFIRMED.