# IN THE COURT OF APPEALS OF IOWA

No. 14-0139
Filed October 15, 2014

**Upon the Petition of**
**LATRAVIUS FENN,**
    Petitioner-Appellant,

**And Concerning**
**KIMBERLY BALDWIN,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Clinton County, John D. Telleen, Judge.

A father appeals the district court order placing two of the parties' children in the physical care of the mother with the understanding the children would reside with the maternal grandparents. **AFFIRMED AS MODIFIED AND REMANDED.**

Adrienne C. Williamson and David M. Pillers of Pillers & Richmond, Clinton, for appellant.

Eric D. Puryear, Davenport, until his withdrawal, then Kimberly Baldwin, Clinton, appellee pro se.

Clayton E. Grueb, Davenport, guardian ad litem for children.

Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**MULLINS, J.**

A father appeals the district court order placing two of the parties' children in the physical care of the mother with the understanding the children would reside with the maternal grandparents. We remand to the district court for an order gradually transitioning the twins into the physical care of the father. We also remand for a modification of child support, medical support, and visitation in light of the modification of physical care for the twins. We affirm the provision requiring the father to pay $2000 for the mother's trial attorney fees.

### I.       Background Facts & Proceedings

Latravius Fenn and Kimberly Baldwin are the parents of a girl, who was born in May 2003, and twin boys, who were born in May 2004. Latravius currently lives in the Chicago, Illinois area. Kimberly lives in Clinton, Iowa. The parents were never married to each other, but lived together in Iowa from the time the oldest child was born until the summer of 2006, when Latravius moved to Georgia. During the time the parties lived together they jointly parented the children. The twin boys have been diagnosed with autism. They have spent much of their lives in the care of the maternal grandparents, Raymond and Barbara Baldwin, also in Clinton.

After Latravius moved to Georgia he regularly exercised visitation with the children, especially with the oldest child. As time went on, he had difficulty contacting the maternal grandparents and making arrangements with them for visitation with the twins. Latravius paid money for the support of the children to Kimberly and the maternal grandparents, although there was no court order in

place requiring him to pay support.[1]  Through the Child Support Recovery Unit Latravius was ordered to pay cash medical support of $169 per month, and he was current on this obligation.

On August 9, 2012, Latravius filed a petition seeking to establish custody, physical care, and child support for the oldest child.  The district court entered an order on temporary matters on August 30, 2012, placing the oldest child in the physical care of Latravius.  The court found Kimberly had failed to support the relationship between Latravius and the child.  Kimberly was granted visitation on alternating weekends and holidays.  The court found Kimberly was unemployed and did not require her to pay child support.

On September 11, 2013, Latravius amended his petition to additionally request physical care of the twin boys.  A guardian ad litem (GAL) was appointed for the children.  The GAL recommended the oldest child remain in the physical care of Latravius.  He recommended the twin boys remain in the physical care of Kimberly, but stated that after Latravius was reintroduced to them and his visitation increased, Latravius could possibly petition the court for modification of the physical care provision of the paternity decree.

A hearing was held beginning on November 19, 2013.  Latravius testified he was thirty-four years old and lived in Carroll Stream, Illinois, a suburb of Chicago.  He has a college degree, is employed as a hosting engineer for Huron Consulting, and earns about $65,000 per year.  Latravius is married to Britta,

---

[1]  He paid a total of about $17,000 to Kimberly and about $3100 to the maternal grandparents.  Latravius also testified he had purchased items for the children, such as shoes, jackets, and diapers.

who had two children from a previous relationship who live with them. He testified the oldest child was doing very well in his care. She is enrolled in private school with Britta's two children and is active in extracurricular activities, such as church, basketball, and Girl Scouts. He stated Kimberly was not willing to accept responsibility for the twin boys and wanted the maternal grandparents to take care of them, but he was willing to accept the responsibility for them. He was also concerned Kimberly and the maternal grandparents did not seek enough outside services for the twins' autism.

Kimberly was thirty-three years old at the time of the hearing. She lives in Clinton, Iowa. In addition to the three children at issue in this proceeding, Kimberly has two other children. There was no evidence about her educational background. Kimberly has primarily been employed as an exotic dancer, but was unemployed at the time of the hearing. She has been diagnosed with obsessive compulsive disorder, body dysmorphic disorder, panic attacks, bipolar disorder, and migraines. There is a founded child abuse report against Kimberly for failure to provide supervision to the parties' oldest child.[2] Kimberly receives $1100 each month in social security disability payments for the twins and she has paid some amount of it to her parents.

---

[2] The parties' oldest child received an injury to her eye. Kimberly kept the child out of school and did not obtain medical services because she was worried the matter would be reported to the Iowa Department of Human Services (IDHS). Eventually, the matter was reported to IDHS and a founded report was issued against Kimberly for failure to provide supervision. When a social worker contacted Kimberly to investigate the incident, Kimberly stated a man in her company was Latravius. This was untrue and the man was actually the father of another of her children who had an active arrest warrant against him. Kimberly also lied to the social worker about whether she had a doctor's appointment set up for the oldest child's injury.

The district court issued a paternity decree on December 30, 2013. The court found, "Latravius impressed the Court as a calm, credible, and responsible man of good character who was a positive role model for his children." The court determined Kimberly was not a credible witness, taking into consideration her facial expressions and voice inflections, and noting she was directly impeached on a number of issues. All three of the parties' children were placed in their joint legal custody.

The court determined the parties' oldest child should remain in the physical care of Latravius.[3] The court noted that when the child had been in Kimberly's care she was absent from or tardy to school an excessive number of times. There were also occasions when Kimberly would deny visitation, even after Latravius had traveled a distance in order to see the child.[4] The court was further troubled by the fact, "Kimberly allows several young people who are not related to her [whom] are in trouble with the law to use her house as an address and frequently to stay overnight." On the other hand, the evidence showed Latravius has maintained a stable, happy, and wholesome household for the parties' oldest child after she was placed in his care by the temporary order of August 30, 2012.

---

[3]  Kimberly did not appeal the district court's decision placing the parties' oldest child in the physical care of Latravius. While there is no issue in this appeal concerning the placement of the oldest child, we review the factors the court considered in placing her in the care of Latravius because these factors are also relevant to the issue of which parent should have physical care of the twins.

[4]  There was one particularly troubling occasion when Kimberly agreed to allow Latravius to take the oldest child to Georgia for a family reunion. After about four days, Kimberly showed up in Georgia with several police officers and claimed Latravius had attempted to kidnap the child, which was not true.

The court concluded the twin boys should be placed in the physical care of Kimberly, "based entirely on the Court's understanding that Kimberly allow [the twins] to continue to reside with her parents as they have in the past." The court stated:

> The Court fully understands that a parent's right to raise their child is generally to be preferred over grandparents. However, under the unique facts of this case, the boys seem to be doing relatively well where they are and Latravius has absolutely no experience in dealing with autistic children. The twins have essentially been in the primary care of Mr. and Mrs. Baldwin for most of their lives and to upset this arrangement would undoubtedly be traumatic.

The court set out a visitation schedule for the parties. Latravius was ordered to pay $940 per month in child support and $279 per month for insurance. Latravius appeals the decision of the district court.

## II. Standard of Review

Issues ancillary to a determination of paternity are tried in equity. *Markey v. Carney*, 705 N.W.2d 13, 20 (Iowa 2005). We review equitable actions de novo. Iowa R. App. P. 6.907. When we consider the credibility of witnesses in equitable actions, we give weight to the findings of the district court, but are not bound by them. Iowa R. App. P. 6.904(3)(g).

## III. Physical Care

Latravius claims the district court should have placed the twins in his physical care. He asserts Kimberly does not have the capacity or interest to provide adequate care for them. He states that while the transition may be difficult for the twins, physical care should be based on their long-term best interests, and he is the parent who can give them the necessary care and

attention they need. Latravius additionally claims the district court should not have placed the children in the physical care of the mother with the understanding they would actually be cared for by the maternal grandparents. He points out the maternal grandparents are not parties to the district court's order and are not bound by the terms of the order. In the past, the maternal grandparents were reluctant to grant him visitation, and he asserts that under the court's order he has no recourse if the grandparents continue to deny him visitation. Latravius claims the district court's order was tantamount to granting the grandparents a guardianship over the children, without the necessity of finding the parents were unfit to care for them.

In determining physical care for children, our first and governing consideration is the best interests of the children. Iowa R. App. P. 6.904(3)(o). When physical care is an issue in a paternity action, we apply the criteria found in Iowa Code section 598.41 (2013). Iowa Code § 600B.40. Our analysis is the same whether the parents have been married, or remain unwed. *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988); *Yarolem v. Ledford*, 529 N.W.2d 297, 298 (Iowa Ct. App. 1994). Our objective is to place the children in an environment likely to promote a healthy physical, mental, and social maturity. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

We first consider the issue of whether the court could properly grant physical care of the twins to Kimberly, "based entirely on the Court's understanding that Kimberly allow [the twins] to continue to reside with her parents as they have in the past." "Ordinarily a dissolution court should award

custody to a natural parent of the children at issue." *In re Marriage of Corbin*, 320 N.W.2d 539, 545 (Iowa 1982). There is a presumptive preference for parental custody, and it is only when neither parent is a suitable custodian that the court should consider an alternative. *In re Mann*, 293 N.W.2d 185, 190 (Iowa 1980). "Courts are not free to take children from parents simply by deciding another home offers more advantages." *Id.*

A court has "authority to award custody of a minor child to a stranger to a dissolution action when both parents are found to be unfit." *In re Marriage of Mitchell,* 531 N.W.2d 132, 133 (Iowa 1995). "[T]he right of grandparents to custody of a child under a divorce decree is no different from that of any third person or stranger to the marriage." *Id.* at 133-34. Grandparents may intervene in a custody proceeding and receive physical care if they have met their burden to prove the unsuitability of the parents. *See In re Marriage of Hunnell*, 398 N.W.2d 877, 878 (Iowa 1987); *In re Marriage of Reschly*, 334 N.W.2d 720, 721 (Iowa 1983).

The availability of grandparents to assist a parent in caring for children is a factor a court may consider in determining which parent should receive physical care. *Melchiori v. Kooi*, 644 N.W.2d 365, 369 (Iowa Ct. App. 2002) (noting grandparents may be better childcare providers than strangers). *See also In re Marriage of Welbes*, 327 N.W.2d 756, 758 (Iowa 1982) (affirming grant of physical care of child to father, who had "assumed the responsibility of caring for her with the assistance of his parents"); *In re Petition of Purscell*, 544 N.W.2d 466, 469 (Iowa Ct. App. 1995) (placing physical care of child with father who

lived with his parents and who would receive assistance from them in caring for the child). The order of the district court, however, did not involve placing the children with a parent who would care for the children with the assistance of grandparents, but instead involved a determination the children should reside with the maternal grandparents.

This case presents unfortunate circumstances. The evidence shows the twins have been living with the maternal grandparents for several years, and inevitably, are bonded with them. It is the maternal grandmother who has taken the children to medical appointments and who has attended their school conferences, with Kimberly also sometimes attending. It was the maternal grandmother who provided most of the testimony in this case concerning the children's autism. She testified that although both the children were nine years old, they were just now almost potty trained and could partially dress themselves. Their ability to communicate is limited. They need an established routine.

While it is difficult to remove the twins from the care of the maternal grandparents, they obviously are not parents to the children, are not parties to this paternity action, and are not subject to the jurisdiction of the court. In effect, the court placed the twins in the physical care of the maternal grandparents without meeting the requirement of finding the parents were not fit to care for the children. See *Mitchell*, 531 N.W.2d at 133. The district court did not find the parents were unfit to care for the children, and in fact, determined that Latravius should have physical care of the oldest child. No one has suggested the parents are unfit to care for the children. Therefore, the children should not be placed in

the care of a third-party, such as the maternal grandparents, but should be placed in the physical care of one of the parents. See *Mann*, 293 N.W.2d at 190.

On our de novo review, we determine the twins should not be placed in the physical care of Kimberly for the same reasons the oldest child was not placed in her physical care. We give considerable deference to the district court's credibility determinations because the court has a firsthand opportunity to hear the evidence and view the witnesses. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992). The evidence showed Kimberly often had problems with truthfulness, was not diligent in sending her children to school, denied Latravius visitation with the children, allowed young people with legal problems to stay in her home, and did not always provide adequate supervision. Furthermore, the evidence showed Kimberly had not accepted the responsibility for caring for the twins for much of their lives.

On the other hand, the district court found Latravius was "a calm, credible and responsible man of good character who was a positive role model for his children." The evidence showed Latravius had done very well taking care of the parties' oldest child. Latravius testified he had done research on autism and how to help children with this condition. He expressed a willingness to work with experts in caring for the children. We determine the twin boys should be placed in the physical care of Latravius. This change, however, should be effected over a period of time to lessen the stress to the twins in changing their residence. We note that in his brief filed in this appeal Latravius suggests that the proposed parenting plan that he submitted to the district court, which included a graduated

visitation schedule, could be used for purposes of such a transition. We determine the case should be remanded to the district court to create a schedule for increasing the time Latravius spends with the twins. As Latravius spends more time with the twins, an increased amount of this time should be spent at his home in Illinois. Because of the unique needs of these children, we are hesitant to dictate a rigid time frame in order to complete the transition, but urge that it take place as expeditiously as the circumstances and needs of the twins will allow. With that said, we determine that the twins should be fully transitioned to living with Latravius not later than twelve months from the filing of this ruling, and they will live with him thereafter.

We also remand to the district court for a modification of the child support, medical support, and visitation provisions of the paternity decree, consistent with this ruling.

### IV. Attorney Fees

Latravius contends the district court should not have ordered him to pay $2000 towards Kimberly's attorney fees because she was not the prevailing party below. Section 600B.25 provides, "The court may award the prevailing party the reasonable costs of suit, including but not limited to reasonable attorney fees." Thus, in paternity actions, an award of attorney fees may only be made to the prevailing party. Iowa Code § 600B.25.

Before the district court, while Kimberly did not prevail on the issue of whether the parties' oldest child should be placed in her physical care, the court placed physical care of the twins with her, albeit with the understanding the

children would actually live with the maternal grandparents. Because she prevailed on this issue before the district court, we conclude the court did not abuse its discretion in ordering Latravius to pay $2000 for her trial attorney fees.

We affirm the parties' paternity decree, as modified in this opinion. We remand to the district court for an order gradually transitioning the twins into physical care with Latravius to be completed not more than twelve months from the filing of this ruling. We also remand for a modification of child support, medical support, and visitation in light of the modification of physical care for the twins. Costs of this appeal are assessed to Kimberly.

**AFFIRMED AS MODIFIED AND REMANDED**.