**Rusty Toddlee YAROLEM,**
**Petitioner–Appellee,**

v.

**Amy LEDFORD, Respondent–Appellant.**

**No. 93–1896.**

Court of Appeals of Iowa.

Dec. 14, 1994.

Bob Siddens of Siddens Law Office, Des Moines, for appellant.

Bradley Norton of Norton & Norton, Attorneys at Law, P.C., Lowden, for appellee.

Heard by SACKETT, P.J., and HABHAB and HUITINK, JJ.

HABHAB, Judge.

Rusty Toddlee Yarolem and Amy Ledford are the parents of one child, Stephanie Jo Yarolem, born July 30, 1991. Rusty and Amy have never been married to each other.

Rusty and Amy began living together in August or September of 1990 after Amy left her husband.[1] Amy brought with her a child from her marriage, Lars Ledford, born July 11, 1989.

1. Amy had married her husband and moved to North Carolina in June 1990. Amy was acquainted with Rusty prior to moving to North Carolina.

In January of 1992, Amy and Rusty separated for two months. An attempted reconciliation failed and Amy permanently moved out of the parties' home on April 20, 1993. Amy took both Stephanie and Lars with her.

Rusty eventually moved to a mobile home temporarily located near his parents' home. Rusty plans to relocate the mobile home on a permanent site sometime in the future. Rusty is currently employed at Pacific Coast Feather and earns $4.85 an hour.

Amy moved in with her mother who lives on a farm south of Indianola. While in this area, Amy met a man whom she plans to marry. Amy, her boyfriend, Stephanie and Lars, Amy's mother and her fifth husband, Amy's two sisters and her brother all live together on the farm. Stephanie and Lars sleep on a mattress in the living room. Amy and her boyfriend sleep on a mattress in the kitchen. Amy is currently unemployed.

On April 28, 1993, Rusty filed this paternity action.[2] The district court found that Rusty was Stephanie's father and awarded him primary physical custody. It awarded Amy liberal visitation and required her to pay $100 per month in child support. The district court stated its decision was not "the result of any gross deficiencies in Amy's ability to parent." Rather, it determined Rusty offered Stephanie more stability and maturity. Amy appeals.

■ Our review in this matter is de novo. Iowa R.App.P. 4. In child custody cases, the best interests of the child is the first and governing consideration. The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3), in *In re Marriage of Weidner,* 338 N.W.2d 351, 355–56 (Iowa 1983), and in *In re Marriage of Winter,* 223 N.W.2d 165, 166–67 (Iowa 1974). All factors bear on the "first and governing consideration"—the court's determination of what will be in the long-term best interests of the child. *In re Marriage of Vrban,* 359 N.W.2d 420, 424 (Iowa 1984). The critical issue in determining the best interests of the child is which parent will

do better in raising the child; gender is irrelevant, and neither parent should have a greater burden than the other in attempting to gain custody in a dissolution proceeding. *In re Marriage of Ullerich,* 367 N.W.2d 297, 299 (Iowa App.1985). The criteria governing custody decisions are the same regardless of whether the parties are dissolving their marriage or are unwed. *Lambert v. Everist,* 418 N.W.2d 40, 42 (Iowa 1988).

■ There is a strong interest in keeping children of broken homes together. *In re Marriage of Jones,* 309 N.W.2d 457, 461 (Iowa 1981). If, however, circumstances arise which demonstrate that separation may better promote the long-term best interests of the children, then a court may depart from the rule. *Id.* These same principles apply when half siblings are involved. *In re Marriage of Orte,* 389 N.W.2d 373, 374 (Iowa 1986).

Amy contends the record requires primary physical care of Stephanie be placed with her. Amy further contends insufficient evidence was presented to defeat the strong interest in not separating half siblings. We disagree.

■ We begin by agreeing with the district court's assessment that both parents are minimally adequate. However, we determine Rusty can provide a more superior environment than Amy for Stephanie.

We find Rusty has the stability and maturity which Amy has always lacked. Rusty has maintained steady employment since graduating from high school. At the time of the trial, Amy was unemployed. Rusty has always lived and worked in the Jones County area. Amy, on the other hand, has continually moved since graduating from high school and intends to move again when she moves out of her mother's home. Amy has failed to show an ability to be stable and self supporting.

We agree with the district court's characterization of Amy's behavior over the last five years as impulsive. Amy gave birth to Lars in high school. Amy moved in with her

---

2. The parties agreed upon paternity and the need for joint custody. The real dispute was over primary physical care, support, and visitation.

future mother-in-law prior to Lars's birth. She got married about a year later in June 1990. The father was in the Marines, stationed in North Carolina. Amy and Rusty attended a number of graduation parties together. Amy then moved down to North Carolina and married her husband. After only a couple months in North Carolina, Amy moved back to Iowa. She met with Rusty and told him that her marriage was not working and she wanted to try a relationship with him. A couple months after moving in with Rusty, the couple decided to have a child. Stephanie was born in July 1991.

Amy eventually decided to get a divorce after Stephanie was born. As the time drew near for her divorce, Amy and Rusty's relationship experienced some problems. At the same time, Amy's husband had returned to Iowa and Amy began to see him frequently.[3] Amy eventually moved back in with her in-laws and husband. Rusty filed a paternity action at this time; however, it was later dropped after Amy returned to live with Rusty. After an episode in which Amy admitted she slept with another man, Amy moved out a second time. This time she moved in with a neighbor of Rusty's. Amy eventually moved to the Indianola area to live in her mother's house. Rusty filed another paternity action after Amy had moved out the second time.

We find it is in Stephanie's long-range best interests to place primary physical care with Rusty. These long-range best interests outweigh the strong interest in keeping half siblings together.

**AFFIRMED.**

---

**3.** The record is not clear as to when Amy and her   husband actually got the divorce.