# IN THE COURT OF APPEALS OF IOWA

No. 15-0511
Filed November 12, 2015

**MICHAEL KENDRICK SERVANTEZ,**
     Petitioner-Appellee,

**vs.**

**CRYSTAL JEANNE KING,**
     Respondent-Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Christopher C. Foy, Judge.

A mother appeals the district court decision granting physical care of the parties' child to the father. **AFFIRMED.**

Michael J. Burdette of Burdette Law Firm, P.C., Clive, for appellant.

Mark A. Young of Young Law Office, Mason City, for appellee.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**VOGEL, Judge.**

Crystal King appeals the district court decision granting Michael Servantez physical care of the parties' child.  On our de novo review we agree with the district court's well-reasoned decision that placing the child in Michael's physical care will provide her a better sense of stability and permanency.  We affirm the decision of the district court.

### I.      Background Facts & Proceedings

Michael and Crystal are both from the Mason City area, where they also both have extended family.  They lived together for a period of time but never married and are the parents of one child, E.S., born in 2011.  After the parties separated they agreed to share the care of E.S.  Michael has a child from a previous marriage, D.S., who is thirteen years old.  Michael and his former wife have joint physical care of D.S.

On March 4, 2014, Michael filed a petition seeking a determination of legal custody, physical care, visitation, and child support for E.S.  In mid-July, Crystal moved to Kearney, Missouri, to live with a man she met online, Christopher Cogswell.  The district court issued an order on temporary matters on July 23 granting Crystal temporary physical care of E.S., giving Michael one full week of visitation every month and ordering him to pay child support.  Michael married his current wife, Angela, in November.

A hearing on Michael's petition was held on December 3.  Michael was then thirty-eight years old and continued to live in Mason City.  He has been employed at Ag Processing, for over fourteen years.  Over a twenty-eight day period he works fourteen, twelve-hour days and earns an annual income of

$53,145. Michael also has had a part-time job delivering pizza for Domino's to earn extra money for the family. He testified that if he were granted physical care of E.S. he would quit his job with Domino's. Michael testified that despite the age difference of the half-siblings, E.S. and D.S. had a very close relationship and enjoyed spending time together.

At the time of the hearing Crystal was thirty-one years old and was living in Kearney with her boyfriend, Christopher. She was employed as a stylist with Look After Hair Company in North Kansas City, working between twenty to thirty-five hours per week and earning $9.10 per hour, plus tips. In the past Crystal had worked for several different employers as a hair stylist, as well as other areas of employment. She claimed to have been the child's primary caretaker.

Michael's former wife, Sarah Hickman, testified that even when she and Michael were not getting along they were able to work cooperatively to share the parenting responsibilities for D.S. Michael's current wife, Angela, testified Michael was "a very family oriented person." She stated that even on days when Michael worked twelve hours he spent quality time with E.S. Crystal's boyfriend, Christopher, testified Crystal was a very good parent and would put E.S.'s interests first. The maternal grandmother, Terri King, testified that if Michael were to have physical care of E.S., she was concerned whether Michael would support E.S.'s relationships with her extended family.

The district court entered an order placing the child in the parties' joint legal custody. The court placed the child in the physical care of Michael, stating:

> Though it is a close question, there are several factors that weigh in favor of awarding Michael physical care. [E.S.] is bonded to her brother, [D.S.]. Awarding Michael physical care will help

promote and strengthen the relationship between [D.S.] and [E.S.] The parenting skills of Michael are more of a known quantity than those of Crystal. Michael has done a good job bringing up [D.S.], who is now 13 years old. Sarah Hickman spoke positively about the way in which Michael has helped raise their son. On the other hand, Crystal has only three years' experience as a parent with [E.S.]. Also, placing [E.S.] with Michael will allow her more opportunities to spend time and develop relationships with her relatives on both sides of her family tree in the Mason City area. Crystal is isolated from her extended family down in Kearney.

The Court is troubled by the decision that Crystal made to move [E.S.] down to Kearney. It does not appear Crystal was particularly concerned about how the move would affect [E.S.] or how disruptive the move would be to the relationship between Michael and [E.S.]. . . . It is the opinion of the Court that when Crystal decided to take [E.S.] and relocate to Missouri, she put her own needs and wants above the best interests of her daughter. . . . At this point. Michael appears to be better able than Crystal to provide [E.S.] with stability and a sense of permanency.

Finally, the mature and responsible manner in which Michael has shared the parenting of [D.S.] with his ex-wife gives the Court confidence that he will support the relationship between Crystal and [E.S.]. The Court is not sure that Crystal would do the same. The fact that Crystal was willing to separate [E.S.] from Michael and effectively minimize his parental involvement in her life suggests Crystal does not view the relationship between Michael and their daughter as particularly important.

(Citation omitted). The court granted Crystal liberal visitation with the child and ordered her to pay child support of $145 per month. Crystal appeals the district court's decision as to physical care.

## II.  Standard of Review

Issues ancillary to a determination of paternity are tried in equity. *Markey v. Carney*, 705 N.W.2d 13, 20 (Iowa 2005). We review equitable actions de novo. Iowa R. App. P. 6.907. When we consider the credibility of witnesses in equitable actions, we give weight to the findings of the district court, but are not bound by them. Iowa R. App. P. 6.904(3)(g).

### III.    Physical Care

Crystal asserts the court should have placed E.S. in her physical care. She points out that she has been the primary caretaker for the child. Crystal believes the district court placed too much emphasis on the relationship between E.S. and her half-sibling, D.S. Crystal states she is in a better position to care for the child due to Michael's work schedule. She claims that on the days when he works a twelve-hour shift he is not able to spend much time with the child, however she acknowledged Michael's new wife, Angela was good to E.S. She furthermore disputes the district court's finding that Michael could provide more stability for the child.

In determining physical care for a child, our first and governing consideration is the best interest of the child. Iowa R. App. P. 6.904(3)(o). When physical care is an issue in a paternity related action, we apply the criteria found in Iowa Code section 598.41 (2013). Iowa Code § 600B.40. Our analysis is the same whether the parents have been married, or remain unwed. *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988); *Yarolem v. Ledford*, 529 N.W.2d 297, 298 (Iowa Ct. App. 1994). Our objective is to place the child in an environment likely to promote a healthy physical, mental, and social maturity. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

While our review is de novo, we defer to the district court's factual findings and credibility assessments. *In re Marriage of Gensley*, 777 N.W.2d 705, 713 (Iowa Ct. App. 2009). The Iowa Supreme Court has stated:

> There is good reason for us to pay very close attention to the trial court's assessment of the credibility of witnesses. A trial court deciding dissolution cases "is greatly helped in making a wise

> decision about the parties by listening to them and watching them in person." In contrast, appellate courts must rely on the printed record in evaluating the evidence. We are denied the impression created by the demeanor of each and every witness as the testimony is presented.

*In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (citations omitted).

In this case, the district court had "the opportunity to observe the witnesses" and determined Michael should have physical care of the child. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007). We concur in the district court's conclusion. There are several factors supporting the court's decision. Michael has demonstrated more stability in his employment and his relationships. The parties' child, E.S., has a close bond with Michael's other child, D.S., who lives with him half of the time. Michael has been able to parent D.S. cooperatively with his former wife, even when they were not getting along, because they were able to put the child's needs first. On the other hand, Crystal put her own wants and needs first when she decided to move with E.S. to Kearney to pursue a relationship with Christopher. The move limited E.S.'s ability to interact with Michael, as well as other family members that live in the Mason City area.

We agree with the district court's conclusion, in a close custody decision, that ultimately placing physical care of the parties' child with Michael was in her best interests.

**AFFIRMED.**