In the Interest of Rhonda Kay LEEHEY,
DOB: 7–20–70 A Child.

Appeal of Sharon FRANKS, Mother.

No. 3–66500.

Court of Appeals of Iowa.

Jan. 26, 1982.

Michael S. Vestle and Stephen B. Jackson, Cedar Rapids, for natural mother, Sharon Franks.

D. J. Ibeling, Cedar Rapids, for natural father, James Leehey.

W. Dennis Currell of Irvine, Currell & Gillespie, Cedar Rapids, guardian ad litem.

Brent Hege, Asst. Atty. Gen. and Richard M. Feeney II, Asst. Linn County Atty., for the State of Iowa.

Heard by OXBERGER, C. J., and DONIELSON, SNELL, CARTER and JOHNSON, JJ.

JOHNSON, Justice.

Natural mother, Sharon Franks, appeals from an order of the juvenile court transferring placement of her child from the foster home originally designated in the CHINA proceedings to the natural father, James Leehey, the mother's former husband. She asserts that: (1) trial court violated section 232.102(6), The Code, by transferring custody of the child following what she alleges was merely a CHINA review hearing; (2) trial court erred in continuing the CHINA adjudication because she sustained her burden of proving that the initial conditions giving rise to the CHINA adjudication no longer existed, and the child should therefore be returned to her custody; and (3) trial court erred in transferring custody of the child to the father because the placement violated the maxim that siblings should not be separated absent compelling circumstances. We affirm in part and reverse and remand in part.

Sharon Franks, mother of Rhonda Leehey, suffered encephalitis in December, 1978, and was hospitalized until January 19, 1979, at St. Luke's Hospital in Cedar Rapids. At the time of this illness, she developed associated hallucinations, vertigo, disorientation, and ataxia. She was discharged from the hospital on January 19, 1979, under medication, but returned in February, 1979, with seizures and headaches, and again received medication. On July 24, 1979, she was admitted to the University of Iowa Hospital with the return of headaches, vertigo and visual hallucinosis and released with medication. She was readmitted September 11, 1979, to the neurology department of the University Hospital with gross personality changes, including explosive behavior and physical abuse towards her children. She was again released from the hospital on October 2, 1979, under medication. Since that time she has been periodically seeing a medical doctor practicing in Cedar Rapids, Iowa, who had treated her for the seizure disorder, depression and hysterical behavior.

As a result of continuing complications from the illness, Sharon contacted the county department of social services (DSS) for help in caring for her three children. The children were removed from her home on August 24, 1979. On August 31, 1979, the county attorney filed a petition seeking to have Rhonda, the child whose interest is involved in this case, adjudicated a child in need of assistance. The petition was subsequently amended and the parties stipulated to the single allegation that the child had been neglected; thereupon Rhonda was adjudicated a child in need of assistance. At the dispositional hearing held on October 17, 1979, legal custody was given to DSS for foster care placement. Rhonda and her two brothers were subsequently placed in the same foster home.

In January, 1980, the social worker handling the case filed a case progress report in which she recommended that custody of Rhonda remain with DSS for continued placement and planning. James Leehey, Rhonda's natural father, objected to the report and recommendation. The court set February 15, 1980, as the time for hearing on the objection, but at the request of Sharon's attorney, the hearing was continued until February 27th. Following the hearing on February 27th, the court entered an order approving the recommendation contained in social worker's report. A subsequent progress report, filed by a different social worker in June, 1980, contained the same recommendation. James Leehey again objected to the progress report and requested the juvenile court transfer custody to him. A hearing was held on August 18, 1980, in which all parties were apprised of the possibility of Rhonda's placement with James Leehey. Trial was set for September 4, 1980, on that issue. The court further ordered that, prior to trial, a home study of James Leehey be completed by the social worker. The resulting report recom-

mended that Rhonda be placed with her natural father for a six-month trial period with DSS retaining legal custody and monitoring the situation. The recommendation also provided that if the trial placement went well, and Sharon had not made any substantive progress towards regaining custody of all three children, then Mr. Leehey should seek permanent custody of Rhonda. Trial commenced on September 4, 1980, but was continued from time to time. Testimony was concluded on November 6, 1980, but the record remained open for receipt of medical testimony in deposition form. The record was reopened for inclusion of Sharon's medical record on January 29, 1981. The juvenile referee filed an order on February 20, 1981, which left legal custody of Rhonda with DSS but transferred placement to James Leehey at the end of the school year in late May or early June 1981. Placement with the natural father was, accordingly, to be temporary for 90 days, after which a progress report was to be submitted to the court, which would review the status and placement. The juvenile court affirmed this order on February 23, 1981. Sharon filed her timely notice of appeal from that order.

■ I. Scope of Review. Our review in this matter is de novo. *In Interest of Blackledge*, 304 N.W.2d 209, 210 (Iowa 1981).

II. Modification of Child Custody. The natural mother first argues that the proceeding before the court was only a review hearing required by section 232.102(6) and that, consequently, the transfer of physical custody to the natural father was unauthorized. The guardian ad litem argues that the proceeding constituted a section 232.103 modification hearing, that notice was given to all interested parties, and that those parties appeared at the hearing. He further argues, apparently, in the alternative, that the placement was merely "continued placement" by the court and DSS as provided in section 232.102(6).

■ We initially note that placement, not legal custody, of this child was changed, thus distinguishing this case from *Black-*

*ledge.* We believe, however, that this change was not mere "continued placement" authorized by section 232.102(6). We conclude, for the reasons which follow, that the change constituted a modification of the original dispositional order.

The juvenile court initially gave DSS complete discretion in placing the child. Under this authority, DSS could arguably change placement at will, subject, of course, to the court's supervisory role and considerations of the best interests of the child. Thus, if only a DSS change of placement had occurred, the guardian ad litem's assertion that the change constituted "continued placement" authorized by section 232.102(6), would be supportable. However, much more than mere change of placement occurred. The juvenile court's order specified that the child be placed with her father. As a result of this specific order, DSS's discretionary powers concerning placement of the child were withdrawn. We conclude that withdrawal of this discretion amounted to a modification of the original dispositional order. We thus must consider whether modification was proper under the circumstances of this case.

First, we are convinced that modification of this nature was not among the alternatives authorized by section 232.102(6). The supreme court has narrowly construed that section as authorizing only three specific alternatives for the juvenile court: return of the child to her home, extension of the placement, and commencement of termination proceedings. *See Blackledge*, 304 N.W.2d at 213. However, authority for modification of a juvenile court's dispositional order is provided in section 232.103. In this regard, the State argues that the present proceeding cannot qualify as a legitimate modification proceeding because no formal application was filed by any authorized person and no notice was given to the natural mother. While we believe the record establishes beyond any doubt that the natural mother knew the hearing would encompass the proposed modification of Rhonda's placement and that she made no objection below on the grounds now al-

leged, we find modification was improper in any event.

"In child custody cases, the first and governing consideration of the courts is the best interests of the child." Iowa R.App.P. 14(f)(15). Precedent is of limited value in deciding this issue, and each case must ultimately turn on its own peculiar facts. *In re Marriage of Carrico*, 284 N.W.2d 251, 254 (Iowa 1979). "One rule which does especially bear on the determination, and which has enjoyed pre-eminent (sic) application in our custody cases, recognizes a child needs a stable and continuing environment." *Id.* The supreme court has "consistently taken the position it is highly desirable the status of children should be fixed as quickly as possible, be thereafter disturbed as little as possible, and then only for the most cogent reasons." *Id.*, quoting *Halstead v. Halstead*, 259 Iowa 526, 531, 144 N.W.2d 861, 864 (1966). In dissolution of marriage cases, a noncustodial parent seeking custody must establish by a preponderance of the evidence that the conditions since the court decree have so materially and substantially changed that the child's best interests make the change in custody expedient. *In re Marriage of Snyder*, 276 N.W.2d 402, 404 (Iowa 1979). This principle is premised on the concept that once custody is fixed it should be disturbed only for the most cogent reasons. *Id.* Since a child's need for a stable and continuing environment is no less important in custody cases arising under the juvenile code, we believe that the requirement of a material and substantial change in circumstances is equally applicable to modification of custody and placement orders pursuant thereto.

The record, in the instant case, is devoid of evidence of conditions since the court's original dispositional order which have so materially and substantially changed that the best interests of the child make a change in custody or placement expedient. However, the record is replete with evidence that the child is well-adjusted in her foster home environment and that visitation with their mother is proceeding well. We are also mindful of the mandate of section 232.102, The Code, that every effort should be made to return the child to his or her home as quickly as possible, and we believe that the DSS's plan recommending, albeit contingently, permanent placement with the father, is inimical to this goal. There is strong evidence indicating that Sharon's condition is stabilizing and she will soon be able to nurture to the needs of her children. Should the continued efforts to return the child to her mother as quickly as possible succeed, and that event seems likely, transfer to the father at this time would only further disrupt the child's environment. In addition, the best interests of a child are ordinarily served by not separating him or her from siblings. *In re Marriage of Junkins*, 240 N.W.2d 667, 668 (Iowa 1976). Moving this child from her foster home would separate her from her brothers and would be further inimical to her best interests. Further, while we are mindful of the presumption of parental preference as to custody of a child, section 633.559, The Code, "the presumption is rebuttable, as the governing consideration must be the best interest of the child." *Hulbert v. Hines*, 178 N.W.2d 354, 361 (Iowa 1970). Having found placement with the father not to be in Rhonda's best interests, we conclude that the juvenile court erred in modifying its original order.

III. Return to Appellant's Custody. As a final matter, we must address Sharon's contention that the preponderance of the evidence shows that Rhonda will not suffer the harm in the manner specified in the order adjudicating her a child in need of assistance, and should thus be returned to Sharon's custody. Sharon's physician initially stated that he thought she was capable of parenting her children, however, he subsequently testified that Sharon had a recoverable illness that can probably be controlled, but still has episodes of despondency and hysteria. He specifically noted one such occurrence which he believed was alcohol induced, but added that the longer the interval from the 1978 illness, the more stable she becomes. While this testimony presents an optimistic prognosis for Shar-

on's illness, it does not establish, by a preponderance of the evidence, that she is now capable of parenting her children. We thus conclude that the juvenile court was correct in refusing to return Rhonda to Sharon's custody at the time of the hearing.

In conclusion, we find that the juvenile court erred in determining that modification of placement was in Rhonda's best interest, but acted properly in refusing to return Rhonda to her mother at this time. We thus remand this case to juvenile court for subsequent proceedings in accordance with this opinion.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.