# IN THE COURT OF APPEALS OF IOWA

No. 16-1954
Filed April 5, 2017

**IN THE INTEREST OF A.J.,**
**Minor Child,**

**D.J., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Julie A. Schumacher, District Associate Judge.

A father appeals from the juvenile court's dispositional review order in a child-in-need-of-assistance proceeding. **AFFIRMED.**

Andrew J. Twinamatsiko of Crary Huff, Sioux City, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Stephanie S. Forker Parry of Forker & Parry, Sioux City, attorney and guardian ad litem for minor child.

Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MULLINS, Presiding Judge.**

The father of A.J., age four, appeals from the juvenile court's dispositional review order in a child-in-need-of-assistance (CINA) proceeding. He argues the State failed to prove by clear and convincing evidence that a substantial and material change in circumstances existed to modify the custody provision of the court's prior dispositional order. We affirm.

## I.      Background Facts and Proceedings

In July 2016, the juvenile court adjudicated the child CINA, pursuant to Iowa Code section 232.2(6)(b), (c)(2), and (n) (2016). A.J. had been the subject of at least four child protective services assessments before she was adjudicated CINA, three of which involved the father. There had been reports the father was "rough" with A.J. and physically disciplined her with a belt. The father was also involved in an incident of domestic violence involving A.J.'s mother that A.J. witnessed. The father repeatedly refused to cooperate with the Iowa Department of Human Services (DHS) regarding these incidents. The father was also the subject of an investigation by law enforcement for allegations of sexual abuse.

The father has a lengthy history of domestic violence. At the time of the adjudication, the father was living with A.J., his girlfriend, their child together,[1] and his girlfriend's older child. The father's girlfriend described incidents in which the father had hit her when she was pregnant and also when she was holding their infant child or her older child. She testified the father had also hit her in the head and face and called her derogatory names. She admitted she had hit the

---

[1] The father's child with his girlfriend is the subject of a separate CINA case and was removed from the parents' custody for failure to provide for the child's medical needs.

father. The father admitted he had been physical with his girlfriend and had broken items in the home when he was angry. The court acknowledged the father's history of domestic violence, his anger-management issues, and that all three children had witnessed the violence. The court noted A.J. had begun mimicking the violence, throwing objects at the father's girlfriend, hitting her, and yelling at the girlfriend's child. The court also found the father treated his girlfriend's other child poorly and his girlfriend used foul language toward A.J., which A.J. repeated. The child's guardian ad litem (GAL) expressed reservations about the father's continued custody of the child but did not resist the custodial arrangement at that time. The court noted it shared similar concerns given the father's history but ultimately determined it was in the child's best interests to remain in the father's custody under the protective supervision of DHS, so long as the father cooperated with services and did not allow contact between the child and his girlfriend.

In August, the court held a dispositional hearing at which the father admitted to physically disciplining A.J. by "whooping" her and smacking her in the face. The father also admitted he had instructed his girlfriend to physically discipline A.J. and frequently allowed his girlfriend to provide unsupervised care for the child. The court noted the father and his girlfriend had continued to expose the children to domestic violence in the home and admonished the father for physically disciplining A.J. and for instructing his girlfriend to physically discipline her. The court warned the father that, if DHS received any information regarding further physical discipline of A.J. or reports of domestic violence between the father and his girlfriend, both could serve as a basis for the removal

of the child from his custody. The court further acknowledged DHS had observed his home to be cluttered and dirty, with food wrappers, dishes, and other items scattered on the floor and the carpet to be extremely soiled. Nevertheless, DHS recommended A.J. remain in the custody of her father, and the State and the GAL reluctantly agreed; A.J.'s mother resisted the recommendations. The court hesitantly continued placement of A.J. with her father and ordered the father to participate in parenting classes and a psychological evaluation.

The court held a dispositional review hearing two months later. At the hearing, the father testified he was no longer in a relationship and had not used physical discipline for A.J. since he had begun parenting classes. He admitted he had anger-management issues but denied having any mental-health issues. He admitted he did not obtain a psychological evaluation until early October; thus his results were unavailable at the time of the hearing. The father testified A.J. had been accepted into a preschool program but he chose not to enroll her despite repeated requests by DHS.

The State presented evidence of several incidents that had occurred since the dispositional hearing in August. On one occasion, the father slept through a visit with his younger child and the service provider was required to parent A.J. during that time. On another occasion in late September, when the service provider arrived at the father's home in the late morning to pick A.J. up for a visit with her mother, the father was still in bed and his girlfriend was parenting A.J. in violation of the court's order. About one week before the review hearing in October, the service provider was present in the father's home for a supervised

visit with his younger child and observed A.J. step on a block and begin to cry. The father believed A.J. was merely seeking attention and became agitated with the child. He called the child negative names and sent her to her room. The service provider observed A.J. to be afraid of her father and heard A.J. ask him not to hit her. The father became argumentative with the service provider and the GAL. At the hearing, the father testified the service provider made up A.J.'s statements.

In a report authored prior to the October incident, DHS recommended the child remain in the father's custody. The State requested the court transfer custody of the child to DHS. The GAL and the child's mother supported the State's request for modification. In its order, the court discussed the father's history of physical abuse, his unaddressed anger-management and mental-health issues, and his resistance to services and treatment, as well as his continued violent relationship with his girlfriend and his allowing her to care for A.J. unsupervised. The court determined reasonable efforts had been made to avoid an out-of-home placement but the efforts had been unsuccessful. It found keeping A.J. in her father's custody would be contrary to her welfare and against her best interests. The court entered an order modifying the custody provision of its prior dispositional order and transferring legal custody of the child to DHS. The court also ordered the father to participate in therapy or treatment to address domestic-violence concerns, his anger-management issues, and age-appropriate parenting and prohibited contact between A.J. and the father's girlfriend.

The father filed an application for interlocutory appeal. Our supreme court determined the challenged ruling was a final order and treated the father's

application as a notice of appeal. The father also filed a motion to stay the modification of custody, which our supreme court denied.

## II. Standard of Review

"We review CINA proceedings de novo." *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "In reviewing the proceedings, we are not bound by the juvenile court's fact findings; however, we do give them weight." *Id.* "Our primary concern is the child[]'s best interests." *Id.* "CINA determinations must be based upon clear and convincing evidence." *Id.* "Evidence is considered clear and convincing 'when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence."'" *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016) (alteration in original) (citation omitted).

## III. Analysis

The father argues the State failed to prove by clear and convincing evidence a substantial and material change in circumstances existed to modify the custody provision of the court's prior dispositional order providing A.J. was to remain in his custody.

Under Iowa Code section 232.103(4), the juvenile court may modify a dispositional order upon good cause if the court finds any of the following circumstances exist:

> (a) The purposes of the order have been accomplished and the child is no longer in need of supervision, care, or treatment.
> (b) The purposes of the order cannot reasonably be accomplished.
> (c) The efforts made to effect the purposes of the order have been unsuccessful and other options to effect the purposes of the order are not available.

(d) The purposes of the order have been sufficiently accomplished and the continuation of supervision, care, or treatment is unjustified or unwarranted.

If the court finds there is good cause, the court must take a second step in the analysis before it may transfer custody. A transfer of custody shall not be ordered unless the court finds there is clear and convincing evidence, "(1) [t]he child cannot be protected from physical abuse without transfer of custody; or (2) [t]he child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance and an adequate placement is available." Iowa Code § 232.102(5)(a). Further, "the court must make a determination that continuation of the child in the child's home would be contrary to the welfare of the child, and shall identify the reasonable efforts that have been made." Id. § 232.102(5)(b).

Finally, our case law has held "a party seeking a modification of the custody provisions of a prior dispositional order must show the circumstances have so materially and substantially changed that the best interest[s] of the child requires such a change in custody." In re C.D., 509 N.W.2d 509, 511 (Iowa Ct. App. 1993) (citing In re J.F., 386 N.W.2d 149, 152 (Iowa 1986)); In re Leehey, 317 N.W.2d 513, 516 (Iowa Ct. App. 1982)). However, we note more recent case law has called this standard into question. See In re M.M., No. 16-0548, 2016 WL 4036246, at *3–4 (Iowa Ct. App. July 27, 2016) (questioning the rule requiring a material and substantial change in circumstances before modifying the custody provision of a prior dispositional order in a CINA action because such a showing is not mandated by statute); see also In re C.P., No. 16-1459, 2016 WL 6269941, at *3 (Iowa Ct. App. Oct. 26, 2016) (Mullins, J., concurring

specially) (noting it is unnecessary to find a material and substantial change in circumstances and stating satisfaction of 232.103(4) is "required to modify the dispositional order"); *In re K.S.-T.*, No. 14-0979, 2014 WL 5865081, at *4 (Iowa Ct. App. Nov. 13, 2014) (noting that a showing of a change in circumstances "is not statutorily mandated"); *In re V.B.*, No. 14-0315, 2014 WL 2600318, at *4 n.3 (Iowa Ct. App. June 11, 2014).

Although *In re M.M.* is not a published opinion of this court, we adopt the analysis of that opinion, *see* 2016 WL 4036246, at *3–4, and agree with its conclusion:

> While we have recognized the legislative amendment authorized modification of a dispositional order without requiring a material and substantial change in circumstances, at least in some instances, we have continued to impose the requirement in deference to the supreme court. *See V.B.,* 2014 WL 2600318, at *4 n.3 ("However, because our supreme court has approved the principle, we defer to the supreme court whether case precedent should still be followed."). Such deference is not necessary here. The decisions of the supreme court regarding Iowa law are binding on this court until overruled by the supreme court or superseded by other legitimate authority. *Leehey* and its progeny, including [*In re R.F.,* 471 N.W.2d 821 (Iowa 1991)], have been superseded by the 2004 amendment to section 232.103(4) and are not controlling under the circumstances presented here. *See McMartin v. Saemisch,* 116 N.W.2d 491, 493 (Iowa 1962) (recognizing decisions are no longer controlling where "outmoded and superseded by statute"). The language of the statute is controlling. We thus hold the juvenile court need not find a substantial change in circumstances as a prerequisite to modification of a dispositional order pursuant to Iowa Code section 232.103(4).

*Id.* at *4.

We must consider both A.J.'s long-range and immediate interests. *See In re D.S.*, 563 N.W.2d 12, 14 (Iowa Ct. App. 1997). A parent's "past performance

provides insight into this determination." *Id.* We focus "on parental change, but the overwhelming bulk of the focus is on the child[] and [her] needs." *Id.* at 15.

The record is replete with evidence the father has physically abused A.J. and otherwise exposed her to domestic violence. He admitted to physically disciplining A.J. and instructing others to physically discipline her. He also admitted to a history of domestic violence in his off-and-on relationship with his girlfriend. Between the time of the dispositional hearing and the review hearing two months later, he allowed his girlfriend to care for A.J. unsupervised against the court's orders prohibiting contact between them. A.J. is young and unable to self-protect. She expressed fear of her father in front of the service provider and begged her father not to hit her. The father delayed participation in a psychological evaluation until the point that his results were not available at the time of the review hearing. Although the father completed parenting classes, he admitted he has not taken any steps to engage in any sort of treatment to address the domestic-violence and child-abuse concerns present in this case. The record also shows the father has had unstable employment and has failed to enroll A.J. in preschool as requested by DHS.

The district court made substantial findings of fact and articulated these conclusions, among others:

> The best interest of [A.J.] requires modification of the dispositional order. While the goal in this case remains reunification with [the father], pending compliance with services, addressing domestic abuse issues, anger management issues, and age appropriate parenting, the safety of [A.J.] cannot be assured in her father's custody.
> Reasonable efforts have been made to avoid this out-of-home placement, but to date, those efforts have been unsuccessful. It is contrary to the welfare of [A.J.] to be in parental

custody at this time. Her current placement is in her best interest and is the least restrictive placement available.

Although the district court did not tie its conclusions to specific code references, we determine the court's findings and conclusions satisfy the statutory requirements. The district court explained that the purposes of the prior placement order could not reasonably be accomplished, and the efforts made to effect the purposes of the order had been unsuccessful and other options to effect the purposes of the order were not available, thus satisfying Iowa Code section 232.103(4)(b) and (c). The court specifically satisfied the statutory requirements of section 232.102(5)(b) with its reasonable efforts and "contrary to the welfare" findings and conclusions. And we are satisfied on our review of the court's ruling that it found the child could not be protected from adjudicatory harm and an adequate placement was available, per section 232.102(5)(a).

Upon our de novo review of the record, we find the statutory grounds for modification of disposition have been satisfied and agree with the findings and conclusion of the juvenile court. We affirm the court's order modifying the custody provision of its prior dispositional order.

**AFFIRMED.**