# IN THE COURT OF APPEALS OF IOWA

No. 18-1708
Filed December 19, 2018

**IN THE INTEREST OF C.K.,**
**Minor Child,**

**T.D., Father,**
        Appellant.
_____


        Appeal from the Iowa District Court for Dickinson County, David C. Larson, District Associate Judge.


        A father appeals the denial of his motion to modify a dispositional order in child-in-need-of-assistance proceedings.  **AFFIRMED.**


        Thor J. Klinker of Smith, Grigg, Shea & Klinker, P.C., Primghar, for appellant father.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for State.

        Shannon L. Sandy of Sandy Law Firm, PC, Spirit Lake, guardian ad litem for minor child.


        Considered by Tabor, P.J., and Mullins and Bower, JJ.

**TABOR, Presiding Judge.**

Concerned about the safety of his now five-year-old son, C.K., Travis moved to modify a dispositional order in the child-in-need-of-assistance (CINA) case. The juvenile court had returned C.K. to the care of his mother, Candace. But Travis feared Candace would expose C.K. to dangerous conduct by Sam, the father of her other child. Travis sought care of C.K. because of Candace's renewed relationship with Sam. Travis also argued placement with him was in C.K.'s best interests.

The juvenile court found no "showing that circumstances have so materially and substantially changed that a modification of the current dispositional order is in the best interests of [C.K.]." The court also decided "the purposes of the current dispositional order, namely, to maintain [C.K.] at home with his mother and sister, can reasonably be accomplished with the services currently being provided." *See* Iowa Code § 232.103(4)(b), (c) (2018). In his petition on appeal, Travis challenges only the court's finding of no material and substantial change. He does not discuss the statutory grounds for modification.[1]

---

[1] Our supreme court has not yet decided whether a 2004 legislative amendment to Iowa Code section 232.103 superseded the "material-and-substantial-change" test adopted in *In re Leehey*, 317 N.W.2d 513, 516 (Iowa Ct. App. 1982) (borrowing test from dissolution-of-marriage cases). Although the material-and-substantial-change standard arose in a published court of appeals case, the supreme court has recited the same principle, but without analysis. *See In re R.F.*, 471 N.W.2d 821, 824 (Iowa 1991) (citing *In re J.F.*, 386 N.W.2d 149, 152 (Iowa Ct. App. 1986)). Our court has been inconsistent in approaching this issue. One approach is to "defer to the supreme court whether case precedent should still be followed." *See In re V.B.*, No. 14-0315, 2014 WL 2600318, at *4 n.3 (Iowa Ct. App. June 11, 2014). Another approach is to find "such deference" unnecessary because the statute superseded supreme court precedent. *See In re M.M.*, No. 16-0548, 2016 WL 4036246, at *4–5 (Iowa Ct. App. July 27, 2016). Because Travis limits his appeal to the material-and-substantial-change question, we elect to address both standards in this decision.

In our de novo review, we reach the same conclusion as the juvenile court.[2] Travis did not satisfy either the statutory grounds for modification described in section 232.103(4) or the material-and-substantial-change test lingering in our case law. Furthermore, being in his mother's care is in C.K.'s best interests.

## I.     Facts and Prior Proceedings

C.K. came to the attention of the Iowa Department of Human Services (DHS) in late 2016. He was living with his mother Candace, his younger half-sister Z.S., and Z.S.'s father, Sam. Authorities suspected Sam was using heroin and methamphetamine in the home, as well as selling marijuana. Sam also had a history of domestic violence against Candace, including once threatening her with a gun. After removing C.K. and Z.S. from the home, the DHS issued a founded child-abuse assessment against Sam for denial of critical care for C.K.[3] The court adjudicated C.K. a CINA and placed him with Travis's parents.[4] Travis has never had custody of C.K.

For the next few months, Candace struggled to maintain stability. She moved often and had no job. She continued an on-again, off-again relationship with Sam, over objections from the DHS. Although ordered by the court to attend

---

[2] We review CINA proceedings de novo. *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017). We are not bound by the juvenile court's fact findings, but we accord them weight, especially when assessing witness credibility. *In re J.A.L.*, 694 N.W.2d 748, 753 (Iowa 2005). Our "principal concern is the best interests of the child." *L.H.*, 904 N.W.2d at 149. CINA determinations must be based on clear and convincing evidence, that is, evidence leaving no "serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

[3] The DHS also confirmed an allegation of illegal drugs after Z.S. tested positive for the presence of methamphetamine in a hair-stat test. The DHS did not confirm the allegation of presence of illegal drugs in C.K. because he tested negative.

[4] The court's March 2017 dispositional order directed C.K.'s custody to remain with his paternal grandparents.

parent-child interactive therapy (PCIT) with C.K., Candace failed to participate. She also did not follow through with court-ordered individual therapy.

But by March 2018, Candace showed improvement. She started to cooperate with services. She also reported to DHS she had ended her relationship with Sam, who was in and out of jail. The DHS planned to return C.K. to Candace's care. Candace found an apartment and a job. In July, following a successful trial home visit, the court transferred custody of C.K. back to Candace, who already had custody of Z.S. Candace worked to maintain a stable home, job, and daycare for the two children. The DHS reported both children were healthy, had their basic needs met, and were bonded with Candace. Candace showed appropriate and affectionate parenting without prompting.

A complication arose in early 2018. Candace revealed to the DHS she was pregnant following an encounter with Sam in October 2017 when they were still in a relationship.

Meanwhile, Sam never progressed in Z.S.'s CINA case. He failed in all juvenile court expectations, including visitation, therapy, and substance-abuse testing and treatment. He continued to engage in criminal activity, resulting in new charges. The State petitioned to terminate his parental rights to Z.S. and intended to file another petition to terminate when the new baby was born.

In April, Candace continued to cooperate with services, according to the DHS reports. The social worker had no concerns about her care for C.K., though Candace admitted losing her full-time job and working only part-time. But the worker did have suspicions Candace was seeing Sam again. The worker cited

text messages, a photograph from a social media site, and observations of a pair of men's boots at Candace's apartment.

Also in April, Travis moved to modify the dispositional order. As reasons, he cited Candace's pregnancy, Sam's release from jail, and Candace's inability to keep a job. The court held a hearing and denied the motion, finding Travis had not shown grounds for modification and it was in C.K.'s best interests to remain with Candace.

> The factual issue presented to the court is not who would be the best parent for [C.K.], but rather, the factual issue presented to the court is whether or not circumstances have so materially and substantially changed that a modification is in the best interests of the child. Based on the record made at the modification hearing, together with a review of the history of this case, the court finds that it has not been shown that circumstances have so materially and substantially changed that it would be in the best interests of [C.K.] to transfer custody from his mother to his father.

As for conclusions of law, the court held

> In the present case, there has not been a showing that circumstances have so materially and substantially changed that a modification of the current dispositional order is in the best interests of [C.K.]. In relation thereto, Travis argues that the purposes of the current dispositional order cannot reasonably be accomplished and that efforts made to effect the purposes of the order have been unsuccessful and other options to effect the purposes of the order are not available. In support of his position, Travis cites the court to section 232.103(4)(b & c), Code of Iowa. Although in the past Candace has not always been diligent in following the DHS case plan and although she has not always been honest with DHS regarding her relationship with Sam . . . , subsequent to the filing of the Motion to Modify Dispositional Order, Candace has realized the seriousness of her actions and she is now taking appropriate steps to follow the case plan. Accordingly, the court concludes that the purposes of the current dispositional order, namely, to maintain [C.K.] at home with his mother and sister, can reasonably be accomplished with the services currently being provided.

The court also commented on C.K.'s best interests.

> Additionally, a removal of [C.K.] from his mother's custody would separate him from [Z.S.], and it would not be in the best interests of either child to be separated from each other.

Travis now appeals the modification denial.[5]

## II.    Discussion

Travis advances three arguments: (1) it is not clear the juvenile court applied the two-step material-and-substantial-change and best-interest test for modification; (2) the evidence showed a material and substantial change in circumstances and C.K.'s best interests warranted a change in custody; and (3) C.K.'s best interests are served by placing him with Travis.

To address Travis's arguments, we must discuss the existing law on modification of dispositional orders.  Travis contends the court's order is "not clear on whether it holds there has been a substantial change in material circumstance" justifying a transfer of custody.[6]

In his petition on appeal, Travis relies on cases holding "Before a dispositional order in a juvenile proceeding can be modified [pursuant to Iowa Code section 232.103], the party seeking modification must first prove a substantial change in material circumstances, and that under the new conditions,

---

[5] The State declined to respond to Travis's petition on appeal.  In the juvenile court, the DHS contended the motion to modify C.K.'s placement should be granted.  When the court denied the motion, the State did not appeal.  Likewise, we have no response to the petition on appeal filed by counsel for Candace.

[6] We see no lack of clarity.  The juvenile court order denying modification and its ruling on Travis's motion to enlarge were both explicit.  "[I]t has not been shown that circumstances have so materially and substantially changed that it would be in the best interests of [C.K.] to transfer custody of his mother to his father."  And "Candace's pregnancy subsequent to the entry of the Dispositional Order, together with all of the other facts and circumstances of this case does not constitute a substantial change in material circumstances."

a change is in the best interests of the child." *In re D.G.*, 704 N.W.2d 454, 458 (Iowa Ct. App. 2005) (citing *In re C.D.*, 509 N.W.2d 509, 511 (Iowa Ct. App. 1993)); *see also In re R.F.*, 471 N.W.2d at 824.

In 2004, our legislature amended section 232.103 to "expand the circumstances by which the juvenile court may modify, vacate and substitute, or terminate a child in need of assistance dispositional order." *See* 2004 Iowa Acts ch. 1154, § 2. The current statute provides the court may modify a dispositional order if any of the following circumstances exist:

> a. The purposes of the order have been accomplished and the child is no longer in need of supervision, care, or treatment.
> b. The purposes of the order cannot reasonably be accomplished.
> c. The efforts made to effect the purposes of the order have been unsuccessful and other options to effect the purposes of the order are not available.
> d. The purposes of the order have been sufficiently accomplished and the continuation of supervision, care, or treatment is unjustified or unwarranted.

Iowa Code § 232.103(4).

Since then, as noted above, panels of our court have split on whether to analyze *only* the statutory grounds or continue to apply the substantial-and-material-change test absent an explicit abrogation of that test by our supreme court. *Compare In re T.I.*, No. 18-0921, 2018 WL 4361065, at *3–4 (Iowa Ct. App. Sept. 12, 2018) (adopting the reasoning of *M.M.*, 2016 WL 4036246, at *4–5, and applying the statutory factors), *and In re A.S.*, No. 17-0663, 2017 WL 2665119, at *1 n.1 (Iowa Ct. App. June 21, 2017) (finding the "material-and-substantial-change" test was superseded by the legislative amendment and not addressing mother's argument the State failed to show a material and substantial change), *and In re*

*A.J.*, No 16-1954, 2017 WL 1278366, at *3–4 (Iowa Ct. App. Apr. 5, 2017) (adopting the reasoning in *M.M.*, 2016 WL 4036246, at *4–5, and applying the statutory grounds), *and M.M.*, 2016 WL 4036246, at *4–5 (reasoning amendment superseded prior supreme court precedent and applying the statutory factors), *with In re T.B.*, No. 18-0767, 2018 WL 4929737, at *4–5 (Iowa Ct. App. Oct. 10, 2018) (finding the evidence met both tests without deciding which test controls), *and In re E.G.*, No. 17-1855, 2018 WL 540995, at *2–3 & nn.4–5 (Iowa Ct. App. Jan. 24, 2018) (recognizing split but not reaching issue since mother raised no statutory argument and circumstances showed a material and substantial change), *and In re C.C.*, No. 16-1678, 2017 WL 104969, at *1–2 (Iowa Ct. App. Jan. 11, 2017) (deferring to supreme court precedent and requiring a showing of both standards), *and In re C.P.*, No. 16-1459, 2016 WL 6269941, at *3 n.2 (Iowa Ct. App. Oct. 26, 2016) (retaining the "material-and-substantial-change" requirement, "absent a definitive decision from the supreme court"), *and V.B.*, 2014 WL 2600318, at *4 n.3 (deferring to the supreme court in applying the substantial change test).

Because Travis limits his appeal to the material-and-substantial-change analysis, and the State has not weighed in, we address that test.[7]  To bolster his claim of a material and substantial change, Travis points to Candace's alleged return to a romantic relationship with Sam, who cannot safely be around C.K. Travis believes Candace has been dishonest with the DHS and the juvenile court.

---

[7] Before the juvenile court, Travis argued grounds for modification existed under subsections 232.103(4)(b) and (c).  The juvenile court found they did not.  But Travis does not object to those findings on appeal.

He cites her pregnancy, her failure to complete PCIT, her inability to hold a job, and Sam's release from jail.[8]

While it is true Candace has been unable to maintain full-time employment, at the time of the hearing she was working part-time and hoped for more hours. She had also reengaged with PCIT with C.K. and was working to complete the therapy program. Neither of these circumstances warrant modification of C.K.'s custody.

The primary risk remains C.K.'s exposure to Sam through Candace. At the hearing, the DHS supported Travis's motion to modify because the case worker suspected Candace was back with Sam. The worker testified her concern was based on three pieces of evidence: (1) she knew Sam left jail on April 6 and, on April 7, she received a Snapchat map screenshot[9] placing Sam at Candace's home;[10] (2) a few days after Sam was released from jail, a visiting social worker noticed a pair of men's work boots in Candace's apartment; and (3) she obtained a transcript of text messages exchanged by Candace and Sam when he was in jail suggesting they were still in a romantic relationship. Again, the transcript is not in our record. The worker testified Candace texted Sam "she misses him and wants him back and wants to have contact with him."[11]

---

[8] In his motion, Travis also alleged C.K. had been ill for a month with flu-like symptoms and high temperatures. Although the DHS worker reported these symptoms in a report in the spring, no one testified they persisted at the time of the late June hearing.

[9] A "screenshot" is a tangible printout of material existing in digital form. *See* 7 Laurie Kratky Doré, *Iowa Practice Series: Evidence* § 5.901:11 (2015).

[10] The worker received the screenshot from a relative of Candace, whose name she could not recall. The screenshot was not dated, but the relative told the worker it was taken on April 9. The screenshot itself is not in our record.

[11] The DHS did not independently request to transfer C.K.'s custody from Candace based on these concerns. Nor did the DHS request transfer of Z.S.'s custody. The DHS worker

In response to these suspicions, Candace testified she no longer wanted a relationship with Sam, but he continued to contact her. Of the Snapchat map, she testified she did not see Sam that day; Sam had not been in her house but she did not know if he had been near her house. As for the texts sent to Sam in jail, Candace testified she told him what he wanted to hear out of fear. She testified the men's boots in her apartment belonged to a friend named Josh. Candace acknowledged she did not consistently meet case expectations until April 2018. She testified she kept in contact with Sam for the first two-and-a-half years of the CINA case because she believed Z.S. should have a relationship with her father. But since April, she resolved she did not want to risk losing her children and now supported terminating Sam's parental rights to both his children. The juvenile court found her testimony credible.

Yet another consideration emerged just before the hearing. The DHS worker expressed, for the first time, reservations about Candace's parenting. The worker alleged the children were becoming harder for Candace to manage. The worker had "strong concerns" Candace would be unable to deal with all three children when the baby arrived. In contrast, the behavioral-health therapist providing services to C.K. believed Candace could manage all three children. The therapist noted Candace's active participation in C.K.'s behavioral therapy. The therapist also testified C.K. is closely bonded to his sister, Z.S., and separating them would hurt C.K.

---

testified if she had conclusive proof Candace had reunited with Sam, she would have requested removal—a tacit admission that her evidence was not reliable.

We credit the therapist's considered view of Candace's parenting abilities over the DHS worker's newly-minted concerns. C.K. has been back in Candace's care for more than one year—with no reports of neglect or abuse. In contrast, C.K. has never been in Travis's care. His objections to her continued custody focus almost entirely on the risk posed by her alleged relationship with Sam.

This case is close. If the evidence of Candace's renewed relationship with Sam were more reliable, it would weigh against Candace retaining custody. As it stands, the juvenile court was in the best position to assess the testimony. And the court believed Candace was sincere in her separation from Sam. Giving proper deference to the juvenile court's credibility determinations, we find the proof tips away from modification. Travis did not show a material and substantial change in circumstances. And given C.K.'s bond with Candace and the risk of harm posed by removing C.K. from the home he shares with his mother and sister, his best interests are served by allowing him to remain there.

Even if Travis had pursued the statutory grounds for modification on appeal, our result would not differ. In written closing arguments to the juvenile court, Travis alleged paragraphs (b) and (c) of section 232.103(4) applied to his motion. First, the juvenile court may modify a dispositional order where "the purposes of the order cannot reasonably be accomplished." *Id.* § 232.103(4)(b). Second, the court may modify a dispositional order where "efforts made to effect the purposes of the order have been unsuccessful and other options to effect the purposes of the order are not available." Iowa Code § 232.103(4)(c). The juvenile court succinctly described the purpose of the current dispositional order as maintaining C.K. "at home with his mother and sister." The court believed this purpose could be

reasonably accomplished with the services in place. We agree. Unlike the circumstances in *M.M.*, where the DHS made substantial resources available to the family and the family "failed to avail itself of those resources to effect positive change," Candace embraced the therapy and other services available to her. *See* 2016 WL 4036246, at *5. Modification was not warranted under the statutory provisions.

As his last pitch, Travis argues it is in C.K.'s best interests to live with him rather than with Candace. Because Travis did not prove the grounds for a modification, we need not address this argument. We affirm the juvenile court order.

**AFFIRMED.**